# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |
|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, On Behalf of Itself and All Others Similarly Situated, | Civ. A. No.: 3:25-cv-02394 |
| Plaintiff, | Judge Jeffrey J. Helmick |
| vs. | CLASS ACTION |
| SIX FLAGS ENTERTAINMENT CORPORATION, RICHARD A. ZIMMERMAN, SELIM BASSOUL, GARY MICK, LOUIS CARR, MICHELLE FRYMIRE, DANIEL HANRAHAN, CHIEH HUANG, JENNIFER MASON, ENRIQUE RAMIREZ MENA, D. SCOTT OLIVET, ARIK RUCHIM, and MARILYN SPIEGEL, |  |
| Defendants. |  |

**MEMORANDUM IN FURTHER SUPPORT OF
THE SANDYS FAMILY'S MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF ITS SELECTION OF LEAD COUNSEL,
AND IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

I.  SUMMARY OF ARGUMENTS PRESENTED .................................................................. 1

II.  CTPF IS NOT A TYPICAL OR ADEQUATE PLAINTIFF ............................................ 3

    A.  CTPF Will Face a Unique Defense to Traceability ................................................. 4

    B.  CTPF is an Aftermarket Purchaser with Misaligned Interests............................... 8

III.  THE SANDYS FAMILY IS THE MOST ADEQUATE PLAINTIFF ............................ 11

IV.  CO-LEAD STRUCTURE ALTERNATIVE .................................................................... 12

V.  CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberghetti v. Corbis Corp.*,
   263 F.R.D. 571 (C.D. Cal. 2010), *aff'd,* 476 F. App'x 154 (9th Cir. 2012)..............................10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................................4

*Bacon v. Honda of Am. Mfg., Inc.*,
   370 F.3d 565 (6th Cir. 2004) ...................................................................................................3

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ...................................................................................................4

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
   No. 3:16-CV-1106, 2017 WL 5759361 (N.D. Ohio Nov. 28, 2017) (Helmick,
   J.)..................................................................................................................................1, 2, 3, 12

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ..................................................................................................5

*Cupat v. Palantir Techs., Inc.*,
   No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534 (D. Colo. Apr. 4, 2025)..........................7

*Doherty v. Pivotal Software, Inc.*,
   No. 3:19-cv-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)...................................2

*In re FleetBoston Fin. Corp. Sec. Litig.*,
   253 F.R.D. 315 (D.N.J. 2008)...................................................................................................8

*Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund*
   *v. Omnicare, Inc.*,
   583 F.3d 935 (6th Cir. 2009) ..................................................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
   227 F.R.D. 65 (S.D.N.Y. 2004) .................................................................................................5

*Kolominsky v. Root, Inc.*,
   No. 2:21-cv-01197, 2022 WL 190053 (S.D. Ohio Jan. 21, 2022).........................................11

*Krim v. pcOrder.com, Inc.*,
   402 F.3d 489 (5th Cir. 2005) ....................................................................................................7

*In re Mirant Corp. Sec. Litig.*,
   No. 1:02-CV-1467-RWS, 2008 WL 11334395 (N.D. Ga. Aug. 5, 2008) ...............................7

*Pirani v. Slack Techs., Inc.*,
   127 F.4th 1183 (9th Cir. 2025) ...............................................................................4, 5, 7

*In re Quarterdeck Off. Sys., Inc. Sec. Litig.*,
   No. CV 92-3970-DWW(GHKX), 1993 WL 623310 (C.D. Cal. Sept. 30, 1993).....................7

*Sierra Club v. United States Env't Prot. Agency*,
   60 F.4th 1008 (6th Cir. 2023) .....................................................................................5

*Slack Techs., LLC v. Pirani*,
   598 U.S. 759 (2023)................................................................................................2, 4

*Soe v. Progenity, Inc.*,
   No. 20-CV-01683-CAB-AHG, 2020 WL 7129365 (S.D. Cal. Dec. 3, 2020).....................2, 10

*Stanich v. Travelers Indem. Co.*,
   249 F.R.D. 506 (N.D. Ohio 2008) .................................................................................4

*Sundaram v. Freshworks Inc.*,
   No. 22-CV-06750-CRB, 2023 WL 1819158 (N.D. Cal. Feb. 8, 2023)..................................8

## Statutes

15 U.S.C. § 77k...........................................................................................................10

15 U.S.C. § 77z-1....................................................................................................1, 2, 3

## Other Authorities

Federal Rules of Civil Procedure Rule 23 ............................................................1, 3, 12

iii

Thomas C. Sandys, individually and as Trustee for the Thomas C. Sandys Trust, and Kathleen A. Sandys, individually and as Trustee for the Kathleen A. Sandys Trust (collectively, the "Sandys Family") respectfully submit this brief in further support of their motion for appointment as Lead Plaintiff and approval of their selection of Lead Counsel, and in opposition to the competing motions.  For the reasons stated herein and in the Sandys Family's opening brief, the Sandys Family should be appointed Lead Plaintiff, and the Court should approve the Sandys Family's selection of Grant & Eisenhofer P.A. as Lead Counsel for the Class.

## I.     SUMMARY OF ARGUMENTS PRESENTED

On January 5, 2026, the Sandys Family filed its motion seeking appointment as Lead Plaintiff and approval of its selection of Lead Counsel.  ECF Nos. 8, 13.  Three other investors filed motions on the same day.  ECF Nos. 9–11.[1]  Of these movants, the Sandys Family is the movant with the largest loss that also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  Because the Sandys Family is the "most adequate plaintiff" to represent the Class, its motion should be granted and the competing motions should be denied.  15 U.S.C. § 77z-1(a)(3)(B)(iii).

The PSLRA envisions a "sequential process" to lead plaintiff selection, in which the Court considers each movant "one at a time," beginning with the movant claiming the largest financial interest in the action.  *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 3:16-CV-1106, 2017 WL 5759361, at \*2 (N.D. Ohio Nov. 28, 2017) (Helmick, J.).  Only the Public School Teachers' Pension and Retirement Fund of Chicago ("CTPF") claims to have a larger financial interest in this litigation than the Sandys Family.  ECF Nos. 8-6, 9-4, 10-2, 11-5.  However, CTPF

---

[1] One investor filed a notice of non-opposition and is no longer contesting appointment.  *See* ECF No. 14.

is neither typical nor adequate, and cannot serve as Lead Plaintiff.  *See HCP*, 2017 WL 5759361, at *2 (recognizing that a movant can be eliminated upon proof that they "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses" that render them "incapable of adequately representing the class"); *see also* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

First, CTPF first bought Six Flags stock more than four months after the merger of Legacy Six Flags and Cedar Fair closed, and after Six Flags had already issued shares pursuant to a separate registration statement not challenged in this litigation.  Under the circumstances, CTPF's ability to trace its purchases to the Registration Statement and plead a claim on its own behalf— let alone serve as a class representative—is in serious doubt.  *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023) (holding that traceability is an element of a Section 11 claim).  A Lead Plaintiff that is unable to trace its shares and thus unable to prove its own claim cannot be appointed.  *See Doherty v. Pivotal Software, Inc.,* No. 3:19-cv-03589-CRB, 2019 WL 5864581, at *11 (N.D. Cal. Nov. 8, 2019) ("The Group has not plausibly alleged that its shares are traceable to the Pivotal IPO and therefore has not plausibly alleged that it has Section 11 standing. Accordingly, the Court finds that the Group is atypical and declines to appoint it as lead plaintiff of the consolidated action.").

Second, since CTPF did not acquire shares directly in the merger but over four months later, certain key disclosures had already come to light and a large portion of the Class's loss had already materialized.  CTPF has no financial interest in advancing that portion of the Class's claims and has every interest in downplaying the importance of those early disclosures to justify its subsequent purchases and to maximize its own damages to the detriment of other members of the Class.  This pits CTPF's interests against those of the Class and further militates against its appointment as Lead Plaintiff.  *See, e.g.*, *Soe v. Progenity, Inc.*, No. 20-CV-01683-CAB-AHG,

2

2020 WL 7129365, at *5 (S.D. Cal. Dec. 3, 2020) (rejecting a lead plaintiff movant whose interests in opposing a negative causation defense diverged from the class's interests).

By contrast, the Sandys Family checks all the statutory boxes for appointment as Lead Plaintiff.  As explained in its opening brief, the Sandys Family filed a timely motion for appointment, and after the elimination of CTPF, the Sandys Family has the largest financial interest among the qualified movants seeking appointment.  ECF No. 13-1.  The Sandys Family also satisfies the typicality and adequacy requirements of Rule 23. The Sandys Family is not susceptible to any challenges to its typicality or adequacy as it acquired its shares directly in the merger, can represent all the Class's interests, and is not subject to any unique defenses.

The Court should grant the Sandys Family's motion and deny all others.

## II.     <u>CTPF IS NOT A TYPICAL OR ADEQUATE PLAINTIFF</u>

Although CTPF purports to be the "most adequate plaintiff," it suffers from multiple deficiencies as a potential class representative that place its interests at odds with those of the Class.  The Court should deny CTPF's motion.

The PSLRA's lead plaintiff presumption can be rebutted upon proof that a movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses" that render the movant "incapable of adequately representing the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).  In other words, a motion may be rebutted upon proof that a movant is either atypical or inadequate under Rule 23.  *See, e.g.*, *HCP*, 2017 WL 5759361, at *9 (evaluating rebuttal arguments on typicality and adequacy).  Typicality requires that the plaintiff's "injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572 (6th Cir. 2004).  "Unique defenses" destroy typicality, and courts decline to appoint representatives with unique defenses due to the "danger

3

that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 524 (N.D. Ohio 2008) (citation omitted). A "class representative should not be permitted to impose such a disadvantage on the class." *Id.* (internal quotation marks and citation omitted).

The "adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent," and the representative must "possess the same interest and suffer the same injury" as other class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In a similar vein, "the representative must have common interests with unnamed members of the class, and . . . it must appear that the representative[] will vigorously prosecute the interests of the class[.]" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007).

CTPF's motion fails on both typicality and adequacy, and should be denied.

### A.     CTPF Will Face a Unique Defense to Traceability

CTPF will be subject to a substantial, unique defense stemming from its inability to trace its acquisitions of Six Flag stock to the Registration Statement.[2] A plaintiff asserting a Section 11 claim must be able to trace the shares it acquired to the challenged registration statement in order to have statutory standing to bring its own claim. *Slack*, 598 U.S. at 770 (concluding that Section 11 "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement"). Traceability refers specifically to whether a plaintiff can "trace the chain of title for their shares" to the relevant offering. *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1190 (9th Cir. 2025).

---

[2] This memorandum of law uses the same capitalized terms as those in the Sandys Family's opening memorandum of law at ECF No. 13-1.

4

Tracing shares to a registration statement is easy when the shares were purchased directly in the offering or when "all of the company's shares were issued in a single offering under a single registration statement." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013); *see also Pirani*, 127 F.4th at 1190. But when shares have been issued pursuant to multiple registration statements, tracing shares to a particular registration statement is harder and an aftermarket purchaser "usually will *not* be able to trace their shares back to a particular offering." *Century Aluminum*, 729 F.3d at 1107-08. The "modern practice of electronic delivery and clearing of securities trades, in which all deposited shares of the same issue are held together in fungible bulk," makes it "virtually impossible to trace shares to a registration statement" once other shares have entered the market. *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 118 (S.D.N.Y. 2004).

In connection with the merger, Six Flags adopted an employee incentive plan and assumed the responsibilities of Legacy Six Flags and Cedar Fair under their respective incentive plans.[3] On an as-converted basis, the three plans allow for the issuance of Six Flags common stock to eligible employees of the Company.[4] Shares issued pursuant to those plans are covered by a registration statement Six Flags filed on July 1, 2024, the day the merger closed.[5] That registration statement is separate and apart from the Registration Statement that gave rise to this litigation. Approximately 12 million Six Flags shares were covered by the incentive plans' registration

---

[3] Six Flags Entertainment Corporation, Form S-8 filed July 1, 2024, at p. 2, available at: https://www.sec.gov/Archives/edgar/data/1999001/000119312524173450/d811234ds8.htm. The Court "may take judicial notice of public and government documents," such as Six Flags' public securities filings. *Sierra Club v. United States Env't Prot. Agency*, 60 F.4th 1008, 1015 n.2 (6th Cir. 2023).

[4] Six Flags Entertainment Corporation, Form S-8 filed July 1, 2024, at p. 2.

[5] *Id.*

statement.[6]  Six Flags' quarterly report for the period ended September 29, 2024—before CTPF bought a single share—states that approximately 40,000 shares constituting "equity-based compensation" were issued after the merger closed.[7]  Those 40,000 shares are distinct from the shares investors received in the merger in exchange for their Legacy Six Flags shares and Cedar Fair units.[8]

CTPF did not acquire its shares directly in the merger due to any prior ownership of Legacy Six Flags stock or Cedar Fair units exchanged in the merger.  Rather, CTPF first acquired approximately 2,000 Six Flags shares on November 27, 2024—months *after* the July 1, 2024 merger closed.  ECF No. 11-4.  Thus, by the time CTPF made its first purchase of Six Flags stock, as many as 40,000 shares subject to a different registration statement were comingled with the shares covered by this case.  CTPF therefore cannot trace the chain of title of its shares to the merger's Registration Statement.

It gets even muddier from there.  CTPF next bought Six Flags shares in March 2025.  ECF No. 11-4.  But in the final quarter of 2024, Six Flags issued another 75,000 shares as equity-based compensation, and during the first quarter of 2025, it issued yet another 724,000 shares of equity-based compensation.[9]  Thus, by the time CTPF started buying in earnest in March 2025, as many

---

[6] Six Flags Entertainment Corporation, Form S-8 Ex. 5.1 filed July 1, 2024, at p.1, available at: https://www.sec.gov/Archives/edgar/data/1999001/000119312524173450/d811234dex51.htm.

[7] Six Flags Entertainment Corporation, Form 10-Q filed November 6, 2024, at p. 5, available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/1999001/000199900124000027/fun-20240929.htm.

[8] *Id.*

[9] Six Flags Entertainment Corporation, Form 10-K filed March 3, 2025, at p. 41, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1999001/000199900125000052/fun-20241231.htm; Six Flags Entertainment Corporation, Form 10-Q filed May 8, 2025, at p. 5, available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/1999001/000199900125000103/fun-20250330.htm.

as 839,000 Six Flags shares were trading on the public market subject to a *separate* registration statement from the Registration Statement at issue in this case. Again, CTPF cannot trace the March 2025 purchases to the Registration Statement with those other shares in the mix, rendering it subject to unique defenses and precluding its appointment as Lead Plaintiff.

It does not matter that 40,000, or even 839,000, is a mere fraction of the total outstanding shares. Courts consistently reject tracing theories premised on the statistical likelihood that shares were purchased traceable to a registration statement. *See e.g.*, *Pirani*, 127 F.4th at 1190; *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496 (5th Cir. 2005); *In re Quarterdeck Off. Sys., Inc. Sec. Litig.*, No. CV 92-3970-DWW(GHKX), 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993) (rejecting argument that "probability favors a finding that plaintiffs' shares were registered shares" when 97% of the shares outstanding were issued pursuant to the registration statement); *In re Mirant Corp. Sec. Litig.*, No. 1:02-CV-1467-RWS, 2008 WL 11334395, at *11 (N.D. Ga. Aug. 5, 2008) (rejecting argument that there was a "99.98% chance" that purchased shares were issued pursuant to the relevant registration statement); *Cupat v. Palantir Techs., Inc.*, No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534, at *16 (D. Colo. Apr. 4, 2025) ("a plaintiff must plead facts supporting a plausible inference that its shares *are* traceable, not simply facts supporting a plausible inference that its shares are *probably* traceable to the challenged registration statement") (emphasis in original).

To hold otherwise would collapse the traceability requirement altogether, because if Section 11 standing existed where there is merely a "very high probability" that aftermarket purchases were made pursuant to the relevant registration statement, it would give "every aftermarket purchaser . . . standing for every share, despite the language of Section 11." *pcOrder*, 402 F.3d at 496. Indeed, the "literal and rigid application of the tracing requirement is a product

7

of Congress' decision to balance the low-burden substantive proof by high-burden standing requirement, and courts should not abrogate the congressional intent by expanding the 'virtually absolute' liability to claims of purchasers whose securities cannot be traced." *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 347 (D.N.J. 2008).

And regardless of CTPF's potential arguments to the contrary, there is no need to go down this path, laden with risk, when the Class on the whole is not subject to this unique defense. Most Class members—like the Sandys Family, and other former Cedar Fair unitholders and legacy Six Flags shareholders—received their Six Flags stock directly in the merger and their standing to assert claims in this case is not in doubt. The Court should not burden the Class with a Lead Plaintiff whose standing will be subject to vigorous dispute at virtually every stage in this litigation. *See, e.g.*, *Sundaram v. Freshworks Inc.*, No. 22-CV-06750-CRB, 2023 WL 1819158, at *5 (N.D. Cal. Feb. 8, 2023) (declining to appoint a movant who had "not plausibly alleged that his shares are traceable" to the relevant offering because they were bought after the expiration of a lock-up period, for lack of typicality).[10]

### B. CTPF is an Aftermarket Purchaser with Misaligned Interests

Substantial questions about traceability aside, CTPF still has irreconcilable, idiosyncratic interests that do not align with the Class's interests on the whole. For these additional reasons, CTPF is an inadequate representative and its motion should be denied.

As noted, CTPF made its first purchase of Six Flags stock on November 27, 2024, more than four months after the merger closed. ECF No. 11-4. In the interim period between the

---

[10] Even if the Court were to view the 40,000 shares that entered the market prior to CTPF's approximately 2,000-share November 2024 purchase as *de minimis*, this would mean CTPF would have Section 11 claims as to only 2,000 shares, representing roughly $50,000 in damages—a far cry from the more than $844,000 loss suffered by the Sandys Family. *See* ECF No. 8-6.

merger's close and CTPF's first purchase, key disclosures beginning to reveal the truth to investors about Six Flags' need for greater investment had already been made. Perhaps most notably, during Six Flags' quarterly earnings call on November 6, 2024, Six Flags CFO Brian Witherow revealed that Six Flags planned to invest between $500 million and $525 million in capital expenditures in both 2025 and 2026, which he said was "necessary to accelerate the integration process and begin to activate the growth potential of the combined portfolio." ¶ 18. CEO Richard Zimmerman similarly admitted that the additional expenditures were necessary, stating that Six Flags' "ability to successfully grow attendance and improve guest spending levels next year will be driven in large part by our compelling capital program." ¶ 18. These statements stood in stark contrast to the statements in the Registration Statement touting investments Six Flags had already made in its business and the anticipated benefits of the merger that would flow from such prior investments.

To that point, an analyst on the November 6, 2024 call highlighted the "shifting narrative" between pre-merger and post-merger statements about investments at Six Flags parks, observing that the "narrative seems to be that you guys were surprised by A, the lack of investments that had been . . . made at the Six Flags Parks and then B, that the level of investment that would be required to sort of begin that turnaround was much greater than you originally anticipated." ¶ 19. On November 14, 2024, Six Flags confirmed the plan for greater investments, announcing a $1 billion investment plan to "enhance the guest experience" through new rides, attractions, and other upgrades. ¶ 80. Thus, by the time of CTPF's first purchase, investors were already learning the truth about the Registration Statement's false narrative.

CTPF's November 27, 2024 purchase was small—just over 2,000 shares for a total cost of under $95,000. *See* ECF No. 11-4. CTPF next made larger purchases beginning on March 5, 2025. But again, more disclosures revealing the woeful truth about Six Flags' need for greater

investments had already come to light by then.  For instance, when Six Flags discussed full-year 2024 earnings and planned capital expenditures on February 27, 2025, Witherow confessed that the capital expenditures included "some level of investment on deferred items at the legacy Six Flags parks," making clear that Legacy Six Flags had been lagging on those investments.  ¶ 82. Market disappointment in Six Flags' state of affairs manifested in an extended stock price slide in the following days.  When CTPF made its second-ever purchase of Six Flags stock on March 5, 2025, the stock was trading at just $40.69 per share.  ECF No. 11-4.  In other words, by the time CTPF began buying more than a nominal amount of shares, more than a third of the total loss investors seek to recover in this case had already materialized.

Defendants will seek to minimize their exposure by arguing, among other things, that the stock price decline after Six Flags' February 27, 2025 earnings release was unrelated to the false and misleading Registration Statement.  This sort of "negative causation" argument is an affirmative defense to Section 11 claims.  *See* 15 U.S.C. § 77k(e); *Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 947 (6th Cir. 2009) ("Loss causation . . . is not an element of a § 11 claim, but an affirmative defense to it.").

Due to the timing of its purchases of Six Flags stock, CTPF has no financial incentive to oppose Defendants' negative causation arguments for the early post-merger period.  This renders CTPF inadequate, as it may seek to maximize its own recovery by downplaying earlier losses the Class suffered.  *See, e.g.*, *Soe v. Progenity, Inc.*, No. 20-CV-01683-CAB-AHG, 2020 WL 7129365, at *5 (S.D. Cal. Dec. 3, 2020) (rejecting a lead-plaintiff motion because the movant's interests on negative causation did not align with the Class's interests, and further reasoning that the "Court need not determine" at the lead-plaintiff selection stage "whether a negative causation defense would be successful"); *see also Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 581 (C.D.

10

Cal. 2010), *aff'd,* 476 F. App'x 154 (9th Cir. 2012) (finding plaintiffs inadequate because the court was "not convinced that the named Plaintiffs would be willing to expend considerable time and resources responding to an argument that is irrelevant to their own cause of action," even though the argument was a key part of many absent class members' claims). Coupled with CTPF's problems with traceability discussed above, its interest in this case is all the more niche.

For these reasons, CTPF is an inadequate representative of the Class, and the Court should deny CTPF's motion.

### III.   THE SANDYS FAMILY IS THE MOST ADEQUATE PLAINTIFF

After CTPF's motion is removed from contention, the Sandys Family is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

The following chart reflects the remaining movants' respective financial interests:

| Movant | Shares Acquired | Cost | Shares Retained | Proceeds | Asserted Loss |
|---|---|---|---|---|---|
| Sandys Family | 27,596.01 | $1,438,028.26 | 22,530.33 | $593,697.24 | $844,331.02 |
| James Colvin Sr. | 24,000 | $1,283,760 | 24,000 | $489,120 | $794,640 |
| Harold Weber[11] | 10,000 | $307,128.50 | 10,000 | $203,800 | $103,328.50 |

As is evident from the chart, the Sandys Family has the largest financial interest in the relief sought of the remaining movants. *See also* ECF Nos. 8–6, 9–4, 10–2 (movant loss charts); *Kolominsky v. Root, Inc.*, No. 2:21-cv-01197, 2022 WL 190053, at *2 (S.D. Ohio Jan. 21, 2022) (finding that the movant with the largest loss had the largest financial interest).

---

[11] Mr. Weber has filed a non-opposition to the other motions as he does not have the largest financial interest. ECF No. 14.

The Sandys Family also satisfies the relevant requirements of Rule 23. As explained in its opening brief, the Sandys Family (1) acquired Six Flags common stock pursuant and/or traceable to the merger's misleading Registration Statement; (2) at prices that were inflated due to Defendants' materially false or misleading statements or omissions; and (3) was damaged thereby when the truth was revealed. The Sandys Family's interests are aligned with the Class's interests, and the Sandys Family has selected counsel that is highly qualified and experienced litigating complex securities class actions such as this. *See* ECF No. 13-1. As such, the Sandys Family is both typical and adequate. *See HCP*, 2017 WL 5759361 at \*8.

Unlike CTPF, the Sandys Family is not subject to any unique defenses or other reason to doubt its adequacy as a class representative. None of the disqualifying questions about CTPF's typicality or adequacy apply to the Sandys Family, nor is there any other reason to doubt the Sandys Family's ability to vigorously represent the Class's interests.

The Sandys family satisfies the PSLRA's requirements for appointment as Lead Plaintiff, and the Court should grant the Sandys Family's motion.

## IV.     CO-LEAD PLAINTIFF ALTERNATIVE

If the court is not inclined to outright deny CTPF's motion for the reasons stated above, the Court may consider a co-Lead Plaintiff structure in the alternative. Specifically, the Court may appoint the Sandys Family as co-Lead Plaintiff to represent investors who received their Six Flags stock directly in the merger, and appoint CTPF as co-Lead Plaintiff to represent investors who purchased Six Flags stock in the aftermarket. This would ensure that the Class is not improperly burdened by CTPF's own unique interests in the case, while allowing CTPF the opportunity to demonstrate its standing by tracing its purchases to the Registration Statement. The Sandys Family recognizes that there may be a benefit to absent aftermarket purchasers if they are represented by

12

an investor whose claims are aligned with theirs.

## V.       <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons stated in their opening brief, the Sandys Family respectfully requests that the Court: (1) appoint the Sandys Family to serve as Lead Plaintiff for the Class; (2) approve the Sandys Family's selection of Grant & Eisenhofer to serve as Lead Counsel for the Class; and (3) grant any such other and further relief as the Court may deem just and proper.

Dated: January 20, 2026

Respectfully submitted,

*/s/ Eric H. Zagrans*

Eric H. Zagrans (Ohio Bar # 13108)
**ZAGRANS LAW FIRM LLC**
1640 Roundwyck Lane
Columbus, Ohio 43065-8416
Tel.: +1.440.452.7100
Fax: +1.866.261.2008
eric@zagrans.com

*Local Counsel for the Sandys Family*

Karin E. Fisch (admission forthcoming)
Vincent J. Pontrello (admission forthcoming)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
kfisch@gelaw.com
vpontrello@gelaw.com

*Counsel for the Sandys Family and Proposed Lead Counsel for the Class*

Laurence Paskowitz
**PASKOWITZ LAW FIRM P.C.**
The Contour
97-45 Queens Boulevard, Ste. 1202

13

Rego Park, NY 11374
Tel: (212) 685-0969
lpaskowitz@pasklaw.com

Michele Carino
**GREENWICH LEGAL ASSOCIATES, LLC**
881 Lake Avenue
Greenwich, CT 06831
Tel: (203) 629-4900
mcarino@grwlegal.com

*Additional Counsel for the Sandys Family*

14